UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| In re:<br><br>LAUNCH PAD LLC F/D/B/A<br>SYNCROB.IT,<br><br>Debtor. | ) ) ) ) ) | CASE NO. 23-31798<br>CHAPTER 11 |
| LAUNCH PAD LLC F/D/B/A<br>SYNCROB.IT,<br>BRANDON MAY, AMY MAY, and<br>THE ESTATE OF CANDI R. MAY,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, and<br>INTERNAL REVENUE SERVICE,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) | Adv. Proc. No. 25-3014 |

**MEMORANDUM OPINION**

This matter is before the Court on the Motion for Summary Judgment (Dkt. No. 35) (the "Motion") filed by the United States of America ("United States") against Plaintiffs Launch Pad LLC, Brandon May, Amy May, and the Estate of Candi R. May (the "Plaintiffs"). Plaintiffs oppose the Motion (Dkt. No. 48) (the "Response") and the United States replied (Dkt. No. 57) (the "Reply").

In the Motion, the United States[1] raises three arguments why summary judgment should be granted in its favor. First, the United States argues that this Court lacks subject matter

[1] The Plaintiffs named two defendants in the Complaint: (i) the United States and (ii) the Internal Revenue Service ("IRS"). (Compl., ¶ 4, Dkt. No. 1.) Only the United States filed an answer. In its Answer, the United States admitted the allegations in Paragraph 4 of the Complaint regarding the named Defendants. (Answer, ¶ 4, Dkt. No. 4.) However, the United States' second affirmative defense is: "The Internal Revenue Service cannot be sued in its own name. The only proper defendant is the United States." (*Id.*, p. 1.) Plaintiffs have not filed a motion for default judgment against the IRS. The United States' pending Motion does not address the second affirmative defense or any pending claims against the IRS. The Court queries whether any summary judgment in the United States' favor disposes of the claims against the IRS. However, that issue is not before the Court.

jurisdiction. Second, the United States challenges whether certain adjustments to the Debtor's income are allowable under applicable tax statutes. Third, the United States challenges several specific income and expense adjustments claimed by the Debtor in its amended tax returns. At a preliminary hearing, the parties agreed that determination of the third argument could be held in abeyance pending a decision on the first two arguments. The parties agreed the first two arguments are matters of law that the Court can determine without further discovery.

As discussed more fully below, upon consideration of the briefs, the Court's own research, and the applicable law, the Court has determined that it has subject matter jurisdiction. Because the Court requires further action by the parties on the remaining arguments, the Motion is denied.

**Facts Relevant to Jurisdiction**

Pertinent to this Memorandum Opinion, it is important to know only that Candi May ("Candi"), was the sole member of the Launch Pad LLC (the "Debtor") in 2020. (Resp., p. 3, Dkt. No. 48.) In 2020, Candi filed paperwork with the Internal Revenue Service ("IRS") to elect tax treatment of the Debtor as a S Corporation. (Brandon May Dep., 12:21–12:24, Dkt. No. 35-2.) Prior to that time, Debtor was taxed as a partnership. (Mot., p. 3, Dkt. No. 35.)

In November of 2021, Brandon May ("Brandon"), Candi's son, acquired a 50 % ownership interest in the Debtor. (Defs.' Ex. 7, Launch Pad, LLC, 2021 Form 1065-SR, p. 7, Dkt. No. 35-8.)[2] The following month, Candi passed away, and Brandon became the sole member of the Debtor. (Resp., p. 3, Dkt. No. 48.)

In March of 2022, instead of filing the tax return form applicable to a S Corporation (that is, Form 1120, U.S. Corporation Income Tax Return, or Form 1120-S, U.S. Income Tax Return

[2] The cited exhibit from the United States' Motion lists Brandon as holding a 50% partnership interest in the Debtor. The Court notes that in the Plaintiffs' filings, Plaintiffs state Brandon holds only 5%. (Compl., ¶ 12, Dkt. No. 1.) The Court utilizes the percentage from the tax document attached to the United States' Motion.

for an S Corporation), the Debtor elected to file a Form 1065, U.S. Return of Partnership Income, for the 2021 business year. (Resp., p. 6, Dkt. No. 48.) Debtor reported $2.9 million in net income. (Defs.' Ex. 1, Launch Pad, LLC 2021 Form 1065, p. 1, Dkt. No. 35-8.)

On August 3, 2023, Debtor filed a petition for relief under Chapter 11 Subchapter V. (Petition, Main Case Dkt. No. 1.[3]) While the bankruptcy case was pending, the Debtor filed an amended Form 1065 in November 2023. (Mot., pp. 3–4, Dkt. No. 35.) Thereafter, the Debtor further amended its 2021 tax return by filing the appropriate form for an S Corporation, mirroring the changes made in the amended Form 1065. (*Id.*) In the amended return, the Debtor's net income became a net loss of $1.6 million. (*Id.*)

Because an S Corporation is treated as a pass-through entity for tax purposes, both Brandon (along with his wife Amy May ("Amy")[4]) and The Estate of Candi May ("Candi's Estate"), filed corollary tax returns and amendments based on the Debtor's returns and amendments. (Mot., p. 5, Dkt. No. 35.) The amended return resulted in Candi's Estate and Brandon collectively asserting a right to receive a tax refund totaling $1,010,894. (Resp., ¶ 38, Dkt. No. 48.)

Meanwhile in the bankruptcy, the Debtor filed a proposed Amended Chapter 11 Sub-V Plan (the "Plan"). (Am. Ch. 11 Plan-Subchapter V, Main Case Dkt. No. 112.) The primary sources of funding for the Plan are the contributions of income tax refunds from Candi's Estate and Brandon:

> [Brandon and Candi's Estate] . . . offered to contribute or assign to the Debtor all amounts refunded to them from the Petition Date to the Class 3 Distribution Date. [Brandon], on behalf of the Debtor . . . will not only devote the time and attention needed to review and file these returns, but he will also personally pay all the costs and fees to prepare the amended returns.[5]

---

[3] ECF filings in the main bankruptcy case, Case No. 23-31798, are cited as "Main Case Dkt. No. __."

[4] Hereafter, any reference to "Brandon" in the context of the tax returns shall include Amy.

[5] The record does not show that an assignment pursuant to Plan § 8.05 occurred. The Plaintiffs allege in the

(*Id*., § 8.05.) The Plan also included a provision for the Court to retain jurisdiction over various proceedings:

> Following Confirmation, the Bankruptcy Court shall retain jurisdiction of all matters arising out of, and related to, this chapter 11 case and implementation of the Plan, including without limitation the matters described in this Section 10.04.

(*Id*., § 10.04.)

The Court entered an order confirming the Plan on March 15, 2024. (Order Confirming Ch. 11 Plan, Main Case Dkt. No. 142.)

On April 24, 2025, the Plaintiffs filed this adversary proceeding pursuant to 11 U.S.C. § 505 seeking a determination of the total amount of tax liability attributable from the Debtor for the taxable year of 2021. The Complaint has three counts. Count I seeks the determination of Brandon's tax liability under Bankruptcy Code § 505. (Compl., ¶ 49, Dkt. No. 1.) Count II similarly seeks the determination of Candi's Estate's tax liability under the same code section. (*Id*., ¶ 54.) Count III asks the Court to compel payment from the IRS of the income tax refunds allegedly due to Brandon and Candi's Estate. (*Id*., ¶ 69.) The Complaint asserts the Court has jurisdiction pursuant to 28 U.S.C. § 1334, 11 U.S.C. §§ 106 and 1142, and § 10.04 of the Plan. (*Id*., ¶ 6.) The United States asserts as a defense that the Court lacks jurisdiction to determine the tax liability of non-debtors under 28 U.S.C. § 1334 and 11 U.S.C. § 505(a) and denies the assertion of jurisdiction as alleged in the Complaint. (Answer, pp. 1–2, Dkt. No. 4.)

After the parties completed certain discovery, the United States filed the pending Motion for Summary Judgment against the Plaintiffs. As noted above, the United States asserts three

---

Complaint that Brandon *promised* to contribute or assign the refunds to the Debtor. (Compl., ¶ 31, Dkt. No. 1.) In its Answer, the United States does not deny the existence of an assignment. Instead, the United States denies that Brandon "can compel the United States to honor any assignment absent compliance with the Anti-Assignment Act. 11 U.S.C. § 3727." (Answer, ¶ 31, Dkt. No. 4.) Thus, the Court will assume for purposes of this Memorandum Opinion that the assignment occurred, reserving any issues regarding compliance with Federal law.

arguments in favor of summary judgment: (1) The Court does not have jurisdiction over the non-debtor plaintiffs to determine their tax liabilities pursuant to 11 U.S.C. § 505, (2) various provisions of the Internal Revenue Code ("IRC") do not allow the Debtor to reduce 2021 income based on refunds the Debtor issued in 2022 for items customers purchased in 2021, and (3) the Plaintiffs have not produced enough evidence to substantiate the amounts claimed on the tax returns.

After notice and a hearing on the Motion, the parties agreed to submit only the first two arguments to the Court for determination, and the Court entered an order consistent with that agreement. (Order, Dkt. No. 55.) The Plaintiffs responded and the United States thereafter replied. With respect to the first argument, both parties agree that the Court has jurisdiction over a determination of the Debtor's tax obligations.[6] The parties, however, disagree whether the Court has subject matter jurisdiction to determine Brandon or Candi's Estate's entitlement to any tax refunds.

With respect to the second argument, the United States argues as a matter of law that the Debtor's amended 2021 income tax return was an improper attempt to reduce income received in 2021 by portions of the 2021 income the Debtor refunded to customers in 2022. The details of the United States' arguments are not required for this Memorandum Opinion, but the United States argues, among other things, that the IRC fixes income in a taxable year via the "all events test," and under that test, the Debtor could not reduce its 2021 income by the refunds issued in 2022. By contrast, Plaintiffs argue that because Debtor was an accrual-method taxpayer, the Debtor was permitted under the "all events test" to adjust its income based on the 2022 refunds. Thus, the

[6] The United States concedes that "this Court does have jurisdiction to determine the tax liability of Launch Pad." (Mot., p. 6, Dkt. No. 35.) The Plaintiffs disputed that this case is solely about the non-debtor parties, Brandon, Amy, and Candi's Estate, explaining "Launch Pad's tax treatment is directly at issue . . . [and] [t]his is precisely the type of claim Section 505 is created to deal with." (Resp., p. 12, Dkt. No. 48.) Although the United States argues the non-debtors' tax liability is the main issue of this proceeding, it maintained in its reply that "this Bankruptcy Court has jurisdiction to determine the tax liabilities of the Debtor." (Reply, p. 1, Dkt. No. 57.)

central dispute raised and extensively argued by the parties stems directly from whether the Debtor properly reported its income in its 2021 amended income tax return. This dispute over the Debtor's taxable income exists and needs to be resolved regardless of the pass-through effect of such returns on the non-debtor Plaintiffs' tax returns.

**Summary Judgment**

This matter is before the Court on a motion for summary judgment. Federal Rule of Civil Procedure 56 provides the basis for summary judgment. Bankruptcy Rule 7056 makes Rule 56 applicable to adversary bankruptcy proceedings. Fed. R. Bankr. P. 7056. Pursuant to Rule 56, this Court may grant summary judgment only if the movant "shows that there is no genuine dispute as to any material fact and movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (citing Fed. R. Civ. P. 56(a)); *see generally Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

However, while the parties focus their summary judgment briefing on issues two and three,[7] the United States has argued that this Court does not have subject matter jurisdiction over the dispute. The Court will, therefore, begin by considering this threshold matter. Federal courts always have an independent obligation to investigate the constitutional and statutory limits of their own subject matter jurisdiction. *Douglas v. E.G. Baldwin & Assocs.*, 150 F.3d 604, 607 (6th Cir. 1998) (citations omitted). The Plaintiffs as the parties alleging federal court jurisdiction bear the burden of proof. *Perry v. EMC Mortg. Corp. (In re Perry)*, 388 B.R. 332, 337 (Bankr. E.D. Tenn. 2008) (citations omitted).

---

[7] The United States filed the Motion before agreeing to limit the Court's determination to issues one and two. A substantial portion of United States' initial briefing focuses on issue three.

**Jurisdictional Law and Application**

Three key statutes are relevant to whether this Court has subject matter jurisdiction to determine tax matters in a bankruptcy proceeding: 28 U.S.C. § 1334, 28 U.S.C. § 157, and 11 U.S.C. § 505. *Johnston v. City of Middletown (In re Johnston)*, 484 B.R. 698, 706 (Bankr. S.D. Ohio 2012.) In § 1334, Congress vested the federal district courts with jurisdiction over all cases "arising in, arising under, or related to title 11," more commonly referred to as the "Bankruptcy Code" or "the Code." 28 U.S.C. § 1334(a); *In re Johnston*, 484 B.R. at 706. The United States District Court for the Western District of Kentucky has referred such cases to the Bankruptcy Court. Joint Ky. Civ. Prac. R. 83.12(a). The Court must also consider whether a matter is "core" or non-core" so that it is clear whether this Court may issue final orders in a proceeding. 28 U.S.C. § 157(b), (c); *Waldman v. Stone*, 698 F.3d 910, 916–17 (6th Cir. 2012.) In addition, § 505 of Bankruptcy Code, with certain limitations, allows the bankruptcy courts to determine tax matters.

The United States argues that the Court does not have jurisdiction over this adversary proceeding because the claims relate to non-debtors and the non-debtor Plaintiffs each have other pass-through entities reported on their tax returns that would complicate any tax liability or refund determination under § 505. Additionally, the United States argues that (i) the determination of the non-debtors' refunds would not impact the Debtor's rights or administration of the estate and (ii) the assignment of the refunds via the Plan does not create jurisdiction under § 1334. Confusingly, the United States also argues the Bankruptcy Court (which is a federal court) has no jurisdiction over refund actions because jurisdiction over those claims is already vested in the federal district courts.

The Plaintiffs argue that the determination of the Debtor's income as reported on its amended 2021 tax returns is the central issue that is within the Courts jurisdiction via § 505. The

Plaintiffs also argue the Court has jurisdiction under § 1334(b) because the determination of the Debtor's income is necessary for the administration of the bankruptcy estate because the prospective refund is the source of funding for the Plan and affects creditor recoveries. While the Plaintiffs argue the Court has jurisdiction over the non-debtor Plaintiffs' tax issues under § 505, the Plaintiffs also request that the Court reframe the relief requested in the Complaint as solely for a determination of the Debtor's income for 2021 tax year purposes.

## I. The Court Has Jurisdiction Over the Debtor's Tax Matters Pursuant to § 505(a)(1)

Bankruptcy Code § 505(a)(1) provides that:

> [T]he [bankruptcy] court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

11 U.S.C. § 505(a)(1). The purpose of § 505 "is to afford a forum for ready determination of the legality or amount of tax claims in order to expedite that decision and avoid the delay of the conclusion of administration of bankruptcy estates if left to another forum." *In re Schmidt*, 205 B.R. 394, 398 (Bankr. N.D. Ill. 1997) (citing *In re Grand Chevrolet, Inc.,* 153 B.R. 296, 300 (C.D. Cal. 1993)).

While there is some debate in the case law as to whether § 505(a) is jurisdictional[8] and whether it applies to non-debtor third parties, the governing law in the Sixth Circuit provides that with respect to *debtors*, the statute provides bankruptcy courts with jurisdiction to determine such matters. *Mich. Emp't Sec. Comm'n v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co.)*, 930

---

[8] Judge Humphrey provides an excellent analysis of the differing views on jurisdiction under § 505 in *Johnston v. City of Middletown (In re Johnston)*, 484 B.R. 698 (Bankr. S.D. Ohio 2012). While Judge Humphrey determined that subject matter jurisdiction did not exist over the claims in that case, the decision was based in large part on the fact that the case was a no asset Chapter 7 proceeding. *Id.* at 714. Thus, this case is distinguishable factually, and the Court follows the more direct statement of the law provided in *Wolverine* discussed below.

F.2d 1132, 1138 (6th Cir. 1991) ("Pursuant to 11 U.S.C. § 505(a), bankruptcy courts have jurisdiction to hear and determine the amount and legality of . . . taxes incurred by the debtors or their estate." (citations omitted)). This authority, however, is discretionary. *See In re Beisel*, 195 B.R. 378, 379 (Bankr. S.D. Ohio 1996) (finding Section 501(a)(1) allows, but does not require, bankruptcy court to determine debtor's tax liabilities).

First, the Court finds it has subject matter jurisdiction. Despite the United States' characterization of the issues, and perhaps due to the Plaintiffs' inartfully drafted Complaint, this action is seeking a recalculation of the Debtor's income for tax purposes.[9] The Court makes this determination primarily on the basis of 11 U.S.C. § 505 and the Sixth Circuit's statement providing that § 505(a) confers jurisdiction over a debtor's tax matters. *In re Wolverine Radio Co.*, 930 F.2d at 1138. This Court declines to address the issue of jurisdiction over non-debtor third party tax obligations at this time.[10] The United States argues that the circumstances here are not appropriate for jurisdiction because of the involvement of the non-debtor third parties. The Court respectfully disagrees. At its heart, this dispute involves the tax obligations of the Debtor. An adjustment to a debtor's income for purposes of tax liability is exactly the type of situation envisioned by § 505.

Second, the Court elects to exercise its discretion to exercise such jurisdiction. The tax determination at issue is a prerequisite to determining the funding of the Plan, and this case cannot be closed absent that determination. This is within the purposes of § 505(a).

---

[9] The Court acknowledges that the Complaint on its face seeks a tax adjustment of the tax obligations of or refunds owed to three non-debtor parties. However, a prerequisite to that determination is the Debtor's calculation of taxable income. Thus, the actual matter in issue is the Debtor's tax obligations. Whether this determination affects other non-debtor's tax obligations is immaterial. Again, the key is that this proceeding requests a determination of the Debtor's tax obligations.

[10] The Court notes that the Sixth Circuit is one jurisdiction in which subject matter jurisdiction may be found under § 505 to determine a *non-debtor's* tax obligations. *Wolverine*, 930 F.2d at 1138 (stating that a "bankruptcy court may determine the tax liabilities of non-debtors only in appropriate circumstances"). But such circumstances are limited and the Court need not reach that issue for the purposes of this Memorandum Opinion.

**II. Alternatively, the Court Has Jurisdiction Pursuant to § 1334(b)**

Even if the Court were not inclined to exercise subject matter jurisdiction under § 505, the Court would still have to exercise jurisdiction under the general jurisdiction authorized by 28 U.S.C. § 1334. As stated above, under § 1334(b) the bankruptcy court has jurisdiction over matters arising in, arising under, or related to a cause under title 11. 28 U.S.C. § 1334(b). Matters "arising in" are those cases that by their very nature could arise in bankruptcy. *In re Wolverine Radio*, 930 F.2d at 1144. Matters arising under are those proceedings that involve a cause of action created by a statutory provision of title 11. *Id*. For the "related to" inquiry, jurisdictions have adopted different tests to determine when a case is "related" enough to the main bankruptcy case to confer jurisdiction. *Insight Terminal Sols., LLC v. City of Oakland (In re Insight Terminal Sols., LLC)*, 666 B.R. 756, 764–65 (Bankr. W.D. Ky. 2024). While the three categories in § 1334(b) are distinct, they operate conjunctively to form the scope of bankruptcy jurisdiction, thus it is only necessary to determine whether the matter is at least "related to" the bankruptcy case. *In re Thickstun Bros. Equip. Co., Inc*., 344 B.R. 515, 520 (6th Cir. B.A.P. 2006) (citing *In re Wolverine Radio Co*., 930 F.2d at 1141).

The Sixth Circuit has adopted the "related to" test from *Pacor Inc. v. Higgins,* 743 F.2d, 984 (3rd Cir. 1984). *See In re Wolverine Radio Co*., 930 F.2d at 1142 (citing *Pacor Inc.,* 743 F.2d at 994); *Insight Terminal Sols.*, 666 B.R. at 764. Under *Pacor*, a bankruptcy court has "related to" jurisdiction generally if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Wolverine Radio Co*., 930 F.2d at 1142 (quoting *Pacor Inc.,* 743 F.2d at 994); *see In re HNRC Dissolution Co*., 761 F. App'x 553, 559–60 (6th Cir. 2019) (citing and quoting *Pacor Inc.,* 743 F.2d at 994). A proceeding has such an effect if the outcome could "alter the debtor's rights, liabilities, options, or freedom of action" or otherwise

impact the administration of the estate. *In re Wolverine Radio Co*., 930 F.2d at 1142 (quoting *Pacor Inc.,* 743 F.2d at 994).

The United States argues that simply pledging a refund as a source of funding for the Debtor's Plan does not confer jurisdiction on the bankruptcy court. That, however, is not the question before the Court. Instead, the litigation in this case relates to the Debtor's rights and liabilities because it requires a determination of the *Debtor's* income for tax obligations. The fact that this determination will affect non-debtor entities' tax refunds and their assignment of those tax refunds to the Debtor does not change this fact. In addition, the potential federal tax refunds that are based on the Debtor's tax returns are the primary source of funding for the Plan. Under the broad *Pacor* test, the results of the determination of the Debtor's income for 2021 will have an effect on the administration of the estate as provided in the Plan. *See In re HNRC Dissolution Co*., 761 F. App'x at 560–61 (rejecting argument that post-confirmation disputes cannot be subject to § 1334(b) jurisdiction).

Case law in this jurisdiction and the Eastern District of Kentucky supports this finding. Similar to this case, the debtor's plan in *OGGUSA, Inc.* included funding from proceeds from litigation against an insider, which litigation was pursued via bankruptcy adversary proceeding. *OGGUSA, Inc. v. Southern Tier Hemp, LLC (In re OGGUSA, Inc.)*, No. 20-50133, 2021 WL 1042865, at *6–11 (Bankr. E.D. Ky. 2021). The bankruptcy court specifically noted that the plaintiffs retained the rights to pursue the claims in the adversary proceeding pursuant to the plan and that such rights "preserved continuing Bankruptcy Court jurisdiction." *Id*. at *14. Because the plaintiffs retained the rights to pursue the claims, that interest was sufficient to "fall within the broad interpretation of property of the estate under § 541." *Id*. at *18–19. Thus, the court found subject matter jurisdiction. *Id*. at *19. In this case, the determination of the Debtor's income for

tax purposes is also sufficiently related to the Court's broad authority over property of the estate (a prospective tax refund) that potentially would be generated by such tax determination.

In addition, another factor that was key to the finding of subject matter jurisdiction in this district is also present in this case: the Debtor's tax status existed pre-petition and the amendment was initiated during the bankruptcy. Moreover, that amendment to the tax return is behind a key provision of the Plan—its funding. As such, the tax determination can be said to be "rooted" in the Debtor's actions and any prospective success of the Plan. *See Insight Terminal Sols.*, 666 B.R. at 764–67.

Finally, while a plan cannot *confer* jurisdiction a court does not otherwise have, a plan can *preserve* that jurisdiction. The Plan in this case did just that: "Following Confirmation, the Bankruptcy Court shall *retain* jurisdiction of all matters arising out of, and related to, this chapter 11 case and implementation of the Plan." (Plan, § 10.04 (emphasis added).) The language of this provision is substantively similar to language another court in this district found sufficient to preserve such jurisdiction. *See Insight Terminal Sols.*, 666 B.R.at 767 (finding plan language sufficient to preserve jurisdiction).

Having found that this Court has "related to" jurisdiction over this proceeding pursuant to § 1334(b), the next step would be to determine whether this is a core or non-core proceeding. *OGGUSA, Inc.*, 2021 WL 1042865 at *27–28. That is, the Court must determine whether it (i) can enter a final determination in the case because it is core or (ii) must issue proposed findings of fact and conclusions of law to the District Court because it is non-core. *Compare* 28 U.S.C. § 157(b) *with* § 157(c)(1) and (2); *see OGGUSA, Inc.*, 2021 WL 1042865 at *27. However, because of the inartful nature of the drafting of the Complaint, the Court will defer this determination until the Plaintiffs amend their Complaint as provided below.

## Conclusion

Having found that the Court has subject matter jurisdiction, the Court has decided that the proper remedy for the inartfully drafted Complaint in this case is amendment rather than summary judgment. *See* Fed. R. Bank. P. 7015. As such, the Court will order the Plaintiffs to amend their Complaint to clarify that the claims in issue are the Debtor's income determinations and amended tax returns based on same. The Plaintiffs should consider whether all the Plaintiffs are necessary for this determination. The Plaintiffs are reminded of their obligations under Bankruptcy Rule 7008 to include a provision whether they consent to the entry of final orders or judgments by the bankruptcy court. Likewise, the United States is reminded of its obligation pursuant to Bankruptcy Rule 7012(b) to include in its responsive pleading a statement whether it does or does not consent to the entry of final orders or judgments by the bankruptcy court.

Because the Complaint will be amended, the Court need not address the United States' second argument at this time. Consequently, this decision denying the Motion will be without prejudice to the United States raising the second argument again. The Court cautions the parties that if the second argument is raised in a subsequent motion, the Court will need better briefing on this argument. Specifically, the Court will need briefing on whether the issue is a question of advanced payments and net operating loss carrybacks as the United States contends, or whether a this is simply a recalculation of 2021 income based upon customer refunds as argued by the Plaintiffs. Furthermore, the parties will need to address whether any factual disputes remain, as the Plaintiffs contend, or whether the question is solely a legal one, as the United States contends. A separate Order consistent with this Memorandum Opinion will be entered this same date.

Mary E. Naumann
United States Bankruptcy Judge
Dated: November 12, 2026

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| In re:<br><br>LAUNCH PAD LLC F/D/B/A SYNCROB.IT,<br><br>Debtor. | ) | CASE NO. 23-31798<br>CHAPTER 11 |
| LAUNCH PAD LLC F/D/B/A SYNCROB.IT, BRANDON MAY, AMY MAY, and THE ESTATE OF CANDI R. MAY,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, and INTERNAL REVENUE SERVICE,<br><br>Defendants. | ) | Adv. Proc. No. 25-3014 |

**ORDER**

Pursuant to the Court's Memorandum Opinion entered this date and incorporated herein by reference, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that:

1. The Motion for Summary Judgment (Dkt. No. 35) filed by the United States of America ("United States") is DENIED.

2. The Court has subject matter jurisdiction pursuant to 11 U.S.C. § 505 and 28 U.S.C. § 1334(b).

3. The Plaintiffs are directed to amend their Complaint to properly reflect the nature of the relief requested as to the Debtor. Said amendment should be filed within 21 days of the entry of this order.

4. The Defendants should file a responsive pleading within the time allowed under the Bankruptcy Rules.

5. The denial of the Motion is without prejudice to the United States' second and third arguments for summary judgment. Those arguments may be re-raised in a subsequent filing if the United States so desires.

6. A new pre-trial conference will be scheduled by separate order.

Mary E. Naumann
United States Bankruptcy Judge
Dated: November 12, 2026